■ AMERICAN TRANSIT INSURANCE COMPANY, Appellant, v LONGEVITY MEDICAL SUPPLY, INC., Respondent, et al., Defendants. [17 NYS3d 1]—

Order, Supreme Court, New York County (Debra A. James, J.), entered October 15, 2014, which, to the extent appealed from, denied plaintiff's motion for summary judgment declaring that it is not obligated to provide no-fault coverage to defendant Longevity Medical Supply, Inc. in connection with the October 7, 2012 motor vehicle accident, affirmed, without costs.

Plaintiff failed to establish prima facie that it was entitled to deny defendant Longevity Medical Supply, Inc.'s claim because Longevity's assignor, defendant Estrella, did not appear for independent medical examinations (IMEs) (*see Unitrin Advantage Ins. Co. v Bayshore Physical Therapy, PLLC*, 82 AD3d 559 [1st Dept 2011], *lv denied* 17 NY3d 705 [2011] [to meet its prima facie burden on summary judgment, insurer must establish that it requested IMEs in accordance with the procedures and time frames set forth in the No-Fault implementing regulations, and that the patient did not appear]; *see also Interboro Ins. Co. v Perez*, 112 AD3d 483 [1st Dept 2013]). Here, although plaintiff established that the notices of the scheduled IMEs were properly mailed and that Estrella did not appear, plaintiff failed to show that the scheduling of the IMEs complied with Insurance Department Regulations (11 NYCRR) § 65-3.5 (d), which prescribes a 30-calendar-day time frame for the holding of IMEs (*see W.H.O. Acupuncture, P.C. v Travelers Home & Mar. Ins. Co.*, 36 Misc 3d 152[A], 2012 NY Slip Op 51707[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2012]; *American Tr. Ins. Co. v Jorge*, 2014 NY Slip Op 30720[U] [Sup Ct, NY County 2014]).

Contrary to the position taken by the dissent, the issue of whether plaintiff has failed to establish that the notices for the

IMEs were timely, pursuant to 11 NYCRR 65-3.5 (d), presents a question of law which this Court can review. Unlike the dissent, we find that plaintiff was required to submit proof of the timely notice in order to make a prima facie showing of entitlement to judgment as a matter of law. Any belated attempt by plaintiff to cure this deficiency in its prima facie showing by submitting evidence for the first time in reply would have been improper (*see DiLapi v Saw Mill Riv., LLC*, 122 AD3d 896, 900-901 [2d Dept 2014]; *Hawthorne v City of New York*, 44 AD3d 544 [2007]; *Scansarole v Madison Sq. Garden, L.P.*, 33 AD3d 517 [1st Dept 2006]).

The dissent mistakenly posits that the majority failed to "cite a single authority for supporting [our] position" that plaintiff was required to submit proof of the timely notice for the IMEs in order to make a prima facie showing of entitlement to judgment as a matter of law. In *Unitrin Advantage Ins. Co. v Bayshore Physical Therapy, PLLC*, we explicitly held that "[p]laintiff satisfied its prima facie burden on summary judgment of establishing that it requested IMEs in accordance with the procedures and *time frames* set forth in the no-fault implementing regulations, and that defendants' assignors did not appear" (82 AD3d at 560 [emphasis added]).

Likewise, the dissent points out that "the majority negates the precedential authority of *Lucas*." Contrary to the dissent's assertion, *Lucas* does not support its position since in *Lucas*, the defendant did not argue on appeal that the plaintiff failed to satisfy its prima facie burden on summary judgment of establishing that it requested IMEs in accordance with the procedures and *time frames* set forth in the no-fault implementing regulations. Here, in contrast, the issue of whether plaintiff met its burden of showing compliance with the applicable time frame was fully briefed on appeal.

Also, contrary to the dissent's suggestion, defendant was not in the best position to determine whether plaintiff complied with the 30-day requirement. As the dissent acknowledges, the 30-day period with which the IME was supposed to be scheduled is measured from the date on which plaintiff received the prescribed verification form from defendant. Yet, no evidence in affidavit form or any other form has been submitted by plaintiff indicating the date upon which plaintiff received the verification from defendant. Thus, contrary to the dissent's assertion, it does not "appear[ ] from the record that plaintiff in fact may well have complied with the requirement in question."

Finally, the dissent argues that a plaintiff's failure to comply with the 30-day time frame for the scheduling of the IME does

not affect a plaintiff's right to deny a claim for services rendered to the insured after the date of the IME for which the insured failed to appear. This contention, however, was never raised by plaintiff in its appellate brief and we therefore decline to consider it. Concur—Renwick, Moskowitz, Richter and Clark, JJ.

Friedman, J.P., dissents in a memorandum as follows: I respectfully dissent.

The point on which the majority affirms the denial of summary judgment to the plaintiff insurer—the absence of evidence as to whether the independent medical examinations (IMEs) for which the insured injured person failed to appear were scheduled within the 30-day time frame contemplated by Insurance Department Regulations (11 NYCRR) § 65-3.5 (d)—was not raised by the defendant medical vendor (Longevity) in its opposition to plaintiff's motion for summary judgment. Rather, Longevity raised the point for the first time in its brief opposing plaintiff's appeal. Had Longevity raised this issue in opposing the motion, plaintiff may well have been able to establish compliance with the regulation in question.

It is undisputed that plaintiff has established that it sent notices of two successive IMEs to the insured and that the insured failed to appear for either IME—a breach of a condition precedent under the policy (as set forth by the mandatory personal injury protection endorsement prescribed by 11 NYCRR 65-1.1 [d]) that ordinarily would vitiate coverage for the loss (*see Unitrin Advantage Ins. Co. v Bayshore Physical Therapy, PLLC*, 82 AD3d 559 [1st Dept 2011], *lv denied* 17 NY3d 705 [2011]). Notwithstanding the undisputed failure of the insured (Longevity's assignor) to appear for the scheduled IMEs, Longevity argues—as previously noted, for the first time on appeal—that plaintiff is not entitled to summary judgment because the record does not affirmatively establish that it complied with a regulation addressing the timing of the first IME. The subject regulation, 11 NYCRR 65-3.5 (d), provides that an insurer wishing to require an IME as additional verification of a claim for motor vehicle no-fault benefits after receipt of the initial prescribed verification "shall schedule the examination to be held within 30 calendar days from the date of receipt of the prescribed verification forms."[1]

---

1. The phrase "prescribed verification forms" apparently refers to certain of the forms enumerated in the preceding section, 11 NYCRR 65-3.4, and set forth in Appendix 13 to the Insurance Department regulations (specifically, forms NF-3, NF-4, NF-5, NF-6 and NF-7).

In pertinent part, 11 NYCRR 65-3.5 ("Claim procedure") provides:

"(a) Within 10 business days after receipt of the completed application for motor vehicle no-fault benefits (NYS form NF-2) or other substantially equivalent written notice, the insurer shall forward, to the parties required to complete them, those prescribed verification forms it will require prior to payment of the initial claim.

"(b) Subsequent to the receipt of one or more of the completed verification forms, any additional verification required by the insurer to establish proof of claim shall be requested within 15 business days of receipt of the prescribed verification forms . . .

"(c) The insurer is entitled to receive all items necessary to verify the claim directly from the parties from whom such verification was requested.

"(d) If the additional verification required by the insurer is a medical examination, the insurer shall schedule the examination to be held within 30 calendar days from the date of receipt of the prescribed verification forms."

In this case, the accident occurred on October 7, 2012; the application for benefits was submitted on or about October 29, 2012; the first IME notice was sent out on November 21, 2012 for an IME to be held on December 12, 2012; and (after the insured failed to appear for the December 12 IME) the second IME notice was sent out on December 13, 2012 for an IME to be held on January 2, 2013 (for which the insured also failed to appear). The record does not reflect when plaintiff received the "prescribed verification forms," but those forms must have been received some time after October 29, 2012, the date of the insured's initial application for benefits. Thus, there is no reason to assume that the scheduling of the first IME on December 12, 2012, was not within 30 days of plaintiff's receipt of the prescribed verification forms. On the contrary, from the aforementioned dates that do appear in the record, it seems highly likely that the first IME was scheduled to be conducted within the 30-day time frame set forth in the regulation.[2] If Longevity wished to oppose the summary judgment on the ground that the IMEs were not scheduled to take place within 30 days from plaintiff's receipt of the prescribed verification forms, it should have raised the issue before the motion court, as the provider did in *National Liab. & Fire Ins. Co. v Tam*

2. Similarly, there is no reason to assume that the first IME notice, dated November 21, 2012 (23 days after October 29, 2012, the date of the initial application for benefits), was not sent out "within 15 business days of [plaintiff's] receipt of the prescribed verification forms" (11 NYCRR 65-3.5 [b]).

*Med. Supply Corp.* (131 AD3d 851 [1st Dept 2015]), an appeal being decided simultaneously herewith in which the panel is unanimously affirming the denial of summary judgment to the insurer. In this case, however, instead of raising the issue in opposition to plaintiff's summary judgment motion, Longevity raised the point for the first time in its respondent's brief opposing plaintiff's appeal. This is what the majority refers to when it asserts that the issue was "fully briefed on appeal."

There is particularly no reason to excuse Longevity's failure to raise this issue in its opposition to the motion when one considers that the 30-day period within which the IME was supposed to be scheduled is measured from the date on which plaintiff received the prescribed verification form *from Longevity itself* (*see* Ops Gen Counsel NY Ins Dept No. 03-02-12 [Feb. 2003], available at www.dfs.ny.gov/insurance/ogco2003/rg030212.htm [noting that the prescribed verification form to which section 65-3.5 (d) refers is, in the case of a non-hospital healthcare provider, "NYS Form N-F 3, Verification of Treatment by Attending Physician or Other Provider of Health Service"]). Thus, Longevity itself has information from which it can determine whether the first scheduled date of the IME (December 12, 2012) was within 30 days of the approximate date of plaintiff's receipt of the verification form that Longevity sent to it. If Longevity had reason to believe that plaintiff failed to comply with the 30-day time frame for the scheduling of the IME, Longevity should have raised that point before the motion court and should have placed the relevant supporting evidence—namely, the verification form and the date Longevity sent that form to plaintiff—in the record.

The majority ascribes to me the position that Longevity was in "the best position" to determine whether plaintiff complied with the 30-day time frame. It is not my view that Longevity was in "the best position" to make this determination, but that it had information within its possession from which it could readily have determined whether it was likely that plaintiff had complied with the requirement. While it may be true, as the majority claims, that Longevity was not in the best position to make this determination, the majority cannot escape the fact that Longevity was well positioned to make this determination. After all, Longevity knows the date on which it sent the verification form to plaintiff.

The majority sidesteps the preservation issue by asserting that plaintiff was obligated to establish compliance with the section 65-3.5 (d) time frame as part of its prima facie burden in moving for summary judgment. However, no appellate court

has ever so held. For example, in *American Tr. Ins. Co. v Lucas* (111 AD3d 423 [1st Dept 2013]), this Court reversed and granted the insurer's motion for summary judgment declaring noncoverage based on the insured's failure to appear for IMEs, even though the record of that appeal does not disclose whether the IMEs had been scheduled to be conducted within section 65-3.5 (d)'s 30-day time frame.[3] While this Court, in affirming summary judgment for the insurer in *Unitrin*, stated that the insurer had "satisfied its prima facie burden on summary judgment of establishing that it requested IMEs in accordance with the procedures and time frames set forth in the no-fault implementing regulations" (82 AD3d at 560), the issue of the insurer's compliance or noncompliance with section 65-3.5 (d) was not raised in that case. Thus, *Unitrin*'s reference to the "time frames set forth in the no-fault implementing regulations" as part of an insurer's prima facie burden on a motion for summary judgment is dictum, not (as mischaracterized by the majority) a holding. Contrary to the majority's cavalier assertion that I "mistakenly" deny that it cites any authority for its position, *Unitrin*'s statement about "time frames" does not constitute authority for the majority's position because that statement is not a holding on any issue that was actually raised in that case.

It is curious that the majority negates the precedential authority of *Lucas* because the issue was not raised in the briefs, but inconsistently relies on *Unitrin* as establishing that the proof of compliance with the 30-day IME time frame is part of the prima facie case, even though there is no mention in the record or briefs for *Unitrin* of the issue of compliance with the 30-day time frame. Indeed, 11 NYCRR 65-3.5 (d), the source of the 30-day time frame, is not even cited in the *Unitrin* briefs, and whether the 30-day time frame was complied with cannot be determined from the *Unitrin* record. Thus, it is rather disheartening to see the majority cite *Unitrin* for the novel proposition they do. In fact, *Unitrin* holds that the assignor's failure to appear for an IME absolves the *insurer* of the obligation to comply with the time requirement for denying a claim (*see* 82 AD3d at 560 [the assignor's failure to appear for an IME gave the insurer "the right to deny all claims retroac-

---

**3.** If the majority is correct that establishing compliance with the 30-day time frame for scheduling the initial IME is part of the insurer's prima facie burden in moving for summary judgment, the motion court's denial of summary judgment to the insurer in *Lucas* was correct and, contrary to the majority's contention, should not have been reversed on appeal simply because the respondent assignee medical vendor failed to raise the point in its brief opposing the appeal.

tively to the date of loss, regardless of whether the denials were timely issued"], citing 11 NYCRR 65-3.8 [c]). Nonetheless, the majority reads *Unitrin* as if it holds that the insurer's noncompliance with a time requirement for scheduling an IME absolves the *assignor* of the obligation to appear for the IME. In other words, the majority reads *Unitrin* backwards.[4]

The majority does not cite a single authority supporting its position and ignores *Lucas*, where we denied recovery even though the insurer did not submit proof of the matters that the majority now proclaims part of the prima facie case. In my view, the 30-day time frame for scheduling an IME is analogous to a statute of limitations and, like a statute of limitations, is a matter to be pleaded and proved by the opponent of the claim—here, the insured or the insured's assignee. The requirement that the insured person appear for an IME as a condition precedent to coverage is a key tool for "preventing fraud" (*Stephen Fogel Psychological, P.C. v Progressive Cas. Ins. Co.*, 35 AD3d 720, 722 [2d Dept 2006]), fraud having long been recognized as an endemic problem in the field of no-fault insurance (*see Matter of Medical Socy. of State of N.Y. v Serio*, 100 NY2d 854, 861-862 [2003]). In a case where there is no dispute either as to plaintiff's sending the insured notice of the IMEs or as to the insured's failure to appear for them, we should not allow this anti-fraud device to be defeated based on a timing provision that was not even raised in the motion court—especially given that it appears from the record that plaintiff in fact may well have complied with the requirement in question and, as previously discussed, Longevity itself has reason to know whether plaintiff did comply.[5] As previously

---

**4.** Also misplaced is the majority's reliance on *Interboro Ins. Co. v Perez* (112 AD3d 483 [1st Dept 2013]), in which we affirmed an order denying the plaintiff insurer's motion for a default judgment and compelling it to accept late answers. It appears from the briefs on which *Interboro* was decided that the parties disputed whether the insurer had established that it had sent notices for examinations under oath to the assignor, not whether such notices had been timely sent.

**5.** The majority baselessly disputes my statement above that "plaintiff in fact may well have complied with the requirement in question." As previously noted, from the dates that do appear in the record—the date of the initial application for benefits (October 29, 2012) and the date of the notice (November 21, 2012) that the first IME would be held on December 12, 2012—there is no reason to assume that the first IME on December 12 was not scheduled within 30 days of plaintiff's receipt of the prescribed verification form from Longevity. In this regard, plaintiff's receipt of the completed verification form must have occurred long enough after October 29 for Longevity to have received the form from plaintiff and then for the completed form to arrive from Longevity at plaintiff's office.

indicated, the pertinent information was, after all, particularly within Longevity's possession.[6]

The majority may be correct in taking the position that failure to schedule an IME within the time frame set by section 65-3.5 (d) bars an insurer from denying coverage based on the insured's failure to appear for an IME.[7] In this case, however, where the issue of the timing of the IME was not raised before the motion court and the record does not establish that IMEs were not timely scheduled, plaintiff should have been granted summary judgment declaring that the insured's coverage for this loss was voided retroactive to the date of the accident by his failure to appear for the scheduled IMEs (*see Unitrin*, 82 AD3d at 560; *Fogel*, 35 AD3d at 721-722; Ops Gen Counsel NY Ins Dept No. 03-02-12 [Feb. 2003], available at www.dfs.ny.gov/insurance/ogco2003/rg030212.htm).

Finally, even if I were to accede to the majority's view that plaintiff was required to demonstrate compliance with the 30-day time frame for the scheduling of the IME as part of its prima facie case, I would still hold that plaintiff is entitled to partial summary judgment barring Longevity from obtaining payments for services incurred *after* the dates of the scheduled IMEs for which the insured failed to appear. In the above-cited opinion issued by the Office of the General Counsel of the Insurance Department (now incorporated in the Department of Financial Services), the Department responded to the following question, among others: "What is the effect [of an insured's failure to appear for a scheduled IME] on (a) pending claims for health services rendered submitted to the insurer, [and] (b) the submission of future claims . . . ?" The Department answered, with respect to (a), that the nonappearance allows the insurer to deny "any pending claim submitted for services rendered," and, with respect to (b), "When an eligible injured person fails to meet the condition precedent for coverage due to that person's failure to comply with a reasonable request for a

---

**6.** The majority's assertion that it would have been "improper" for plaintiff to establish compliance with section 65-3.5 (d) in its reply papers in the motion court, had Longevity raised the issue in its opposition, assumes the matter in dispute, namely, whether the demonstration of such compliance was an element of the prima facie showing necessary for summary judgment. Again, the majority cites no authority supporting its position on this issue.

**7.** I note that section 65-3.5 (d), ostensibly requiring that an IME be scheduled to be held within 30 days of the insurer's receipt of the prescribed verification forms, is in tension with the mandatory personal injury protection endorsement prescribed by 11 NYCRR 65-1.1 (d) (I) (Conditions), which provides: "The eligible injured person shall submit to medical examination by physicians selected by, or acceptable to, the Company, *when, and as often as,* the Company may reasonably require" (emphasis added).

medical examination, the breach of that policy condition obviates the obligation of the No-Fault insurer to provide coverage for any future claims for health services arising from the same accident provided to that person by any health provider."

The Department's bifurcation of the issue between benefits for past and future treatment suggests a way to harmonize the 30-day time frame of section 65-3.5 (d) with the previously noted provision of the mandatory personal injury endorsement requiring the insured person to "submit to medical examination . . . when, and as often as, the Company may reasonably require" (*see* 11 NYCRR 65-1.1 [d] [I] [Conditions]). If the insurer fails to comply with the 30-day time frame in scheduling the IME, it may lose the right to deny a claim for services rendered to the insured *before* the date of the IME for which the insured failed to appear.[8] However, given that the insured's failure to appear for an IME "when, and as often as, the [insurer] may reasonably require" is a breach of a condition precedent to coverage, whether or not the insurer has complied with the 30-day time frame, the breach of the condition should entitle the insurer to deny claims for treatment rendered to the insured *after* the date of the IME for which the insured failed to appear. Accordingly, even under the majority's view of the law, we should modify to grant plaintiff partial summary judgment declaring it entitled to deny claims for any services rendered to the insured after the dates of the scheduled IMEs for which he failed to appear.[9]

---

**8.** Again, in this case, there is no reason to believe that plaintiff failed to comply with the 30-day time frame in scheduling the IME, although plaintiff did not present evidence establishing that it did comply with the time frame.

**9.** The effect of plaintiff's establishing the insured's failure to appear for the IME's, but failing to establish its compliance with the 30-day time frame for scheduling the first IME, is a pure question of law arising from the record. Accordingly, we may consider it even though the parties have not addressed it in their briefs. The majority can hardly fault plaintiff for not making an alternative request for partial summary judgment in its brief, considering that the majority's decision turns on an issue that was never even mentioned in Supreme Court.